FILED
NOV 30 2007
[Clerk signature]

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br>vs.<br><br>ELMER FINK, JR., a/k/a Elmer<br>Eugene Fink, JEANETTE FINK,<br>BERT GEORGE FINK, ALLIED<br>COLLECTION, ACCOUNTS<br>MANAGEMENT, BRISTOL LIVING<br>TRUST, TRIPLE F LIVING TRUST, and<br>AURORA COUNTY, a political<br>subdivision of the State of<br>South Dakota,<br>    Defendants. | \*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\* | CIV 04-4130<br><br>**MEMORANDUM OPINION<br>AND ORDER RE: SUMMARY<br>JUDGMENT MOTIONS AND<br>MOTION FOR<br>DEFAULT JUDGMENT** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| ELMER FINK, JR, AND JEANETTE<br>FINK,<br>    Counter-Plaintiffs,<br><br>vs.<br>UNITED STATES OF AMERICA,<br>DEPARTMENT OF AGRICULTURE,<br>FARM SERVICE AGENCY f/k/a<br>Farmers Home Administration,<br>    Counter-Defendants. | \*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\*<br>\* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

    Plaintiff, United States of America, on behalf of the Department of Agriculture, Farm Services Agency f/k/a Farmers Home Administration, (hereafter Plaintiff), filed a complaint seeking foreclosure of real estate mortgages and to quiet the title of the land in Aurora County. Doc. 1. After the Court denied the motions to dismiss filed by Defendants Elmer Fink Jr., and Jeanette Fink and the Bristol Living Trust and Triple F Living Trust, these Defendants filed answers and counterclaims. Doc. 24, 25, 26. Defendant, Bert Fink, Jr., had earlier answered the complaint. Doc. 11. Defendants Elmer Fink, Jr., and Jeanette Fink then filed a motion entitled "Motion for Declaratory Judgment on Offset Parity Claim, Court Ordered Assignment, and Judgment on Balance of Parity Claim Payment." (Doc. 50) which was denied by this Court Doc. 55. Now pending before the Court are the Plaintiff's Motion for Summary Judgment on the Plaintiff's claims and the

counterclaims brought against it (Doc. 75) and a document filed by Defendants Elmer Fink, Jr. and Jeanette Fink titled "Response and Resistance to Motion," "Motion for Summary Judgment on Counterclaim and Third Party Complaint," and "Motion for Default." Doc. 80. Defendants Bert Fink, Bristol Living Trust and Triple F Living Trust[1] have also responded to the Plaintiff's motion for summary judgment. Doc. 82, 83, 84.

## FACTUAL BACKGROUND

Plaintiff is the owner and holder of promissory notes and real estate mortgages concerning real property located in Aurora County, South Dakota. Loan No. 43-09 and Loan No. 43-10 are promissory notes entered into only by Elmer Fink, Jr. with the Farm Services Agency f/k/a Farmers Home Administration (hereafter FSA). Both Elmer Fink, Jr., and Jeanette Fink mortgaged as security for Loan Nos. 43-09, 43-10, and 43-98, the real property in Aurora County upon which Plaintiff moves to foreclose. Loan No. 43-98 is the loan code that was created for the sums advanced by Plaintiff for a title opinion. Promissory Note 43-16 is a chattel loan which is not cross collateralized by real estate and for which no chattel security remains. The promissory notes as well as the mortgages in issue were timely recorded with the Aurora County Register of Deeds.

The FSA's first mortgage with the Finks was filed on April 3, 1978, with the Aurora County Register of Deeds. The land secured by the real estate mortgage filed on July 13, 1982, is described as:

> The Northwest Quarter (NW¼) of Section
> Thirty-one (31), Township One Hundred Five
> (105) North, Range Sixty-four (64), West of
> the 5th P.M., Aurora County, South Dakota.

The assessed value of this property is $71,199.00.

Defendant Elmer Fink Jr. and Jeanette Fink have failed to make payments on promissory notes 43-09, 43-10, 43-98, and 43-16, although the Defendants contend that "Plaintiff has and is being paid all along from the earnings of the assets held in trust and had been satisfied by assignment

---

[1] All pleadings for the trusts have been signed by Elmer Fink, Jr., as co-trustee of the trusts. The Court notes that the Eighth Circuit Court of Appeals has held that a trust cannot appear in federal court without legal representation. See *Knoefler v. United Bank*, 20 F.3d 347, 348 (8th Cir. 1994).

from the Parity Claim against the Department of Agriculture, Secretary of Agriculture."[2] The promissory notes provide that failure to pay any of the debt when due, or the failure to perform any covenant or agreement in the promissory notes, allows the Plaintiff to accelerate the debt. The real estate mortgages also provide that if there is a default in the performance or discharge of the promissory note or mortgage in issue, the Plaintiff may accelerate the note and foreclose the mortgage as provided by law. FSA has accelerated the debt owing on promissory notes 43-09, 43-10, 43-98, and 43-16. All of the borrowers' debt restructuring, mediation, and associated administrative appeal rights as provided in 7 C.F.R. Part 1951, subpart S, have been exhausted with regard to the notes in issue. As of October 5, 2007, there was due and owing to the FSA on notes 43-09, 43-10, and 43-98 and the mortgages, the sum of $62,926.97 plus interest.

On March 27, 1996, the Finks recorded with the Aurora County Register of Deeds a Lease dated December 27, 1992, between Triple F Living Trust, as Landlord and Elmer Fink, Jr., as Tenant. The lease has a notary date of March 26, 1996. Although the Lease names Triple F Living Trust as the Landlord, the signature line shows it was executed by Elmer Eugene Fink, co-trustee, on behalf of Bristol Living Trust, instead of on behalf of Triple F Living, as Landlord, and lists Bert George Fink, instead of Elmer Fink, Jr., as Tenant. On March 29, 1996, a "Correction Lease" regarding the Aurora County land in issue was filed by Triple F Living Trust as Landlord to Elmer Fink, Jr., as Tenant. This "Correction Lease" is dated December 27, 1992, with a notary date of March 26, 1996. Although the "Correction Lease" names Triple F Living Trust as the Landlord, the signature line is executed by Elmer Eugene Fink, co-trustee, on behalf of Bristol Living Trust, rather than on behalf of Triple F Living Trust, and lists Bert George Fink, rather than Elmer Fink, Jr., as Tenant. The FSA did not give Triple F Living Trust, Bristol Living Trust, Elmer Eugene Fink, or Bert George Fink permission to lease the real property in which FSA has a security interest.

Defendant Elmer Fink, Jr., and Jeanette Fink, have also recorded a "Grant Deed", dated January 16, 1986, between Bristol Living Trust, and Elmer Fink, Jr., and Jeanette Fink. This "Grant Deed," which was filed with the Aurora County Register of Deeds on June 30, 1993, describes Elmer Fink, Jr. and Jeanette Fink as parties of the second part, and Bristol Living Trust as a party of the first

---

[2]Defendants further contend, "There was remaining a balance owed to Finks from Secretary of Agriculture in the amount of $950,238.29 as of March 1, 2005." Doc. 80.

3

part. The "Grant Deed" provides that for consideration of ten dollars the "Party of the First Part "is conveying the Aurora County property in issue to the "Party of the Second Part."

A document entitled "Bill of Sale" was also filed with the Aurora County Register of Deeds on August 15, 1994. This "Bill of Sale" lists Bristol Living Trust as the seller and Triple F Living Trust as the buyer of the north half of the real property which the Finks mortgaged to the FSA. The consideration listed for the transaction is ten dollars.

## Principles of Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

Once the moving party has met its burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 257; *City of Mt. Pleasant v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 273-74 (8th Cir. 1988). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## WHETHER PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON ITS ACTION FOR JUDGMENT AGAINST ELMER FINK, JR. AND DECREE OF FORECLOSURE?

When the United States is a creditor, the law of the state where the court is situated applies when giving effect to the discharge of a mortgage or lien. *See* 28 U.S.C. § 2410(c). Therefore, the

issue of foreclosure is properly governed by South Dakota law. *See United States v. Geraldson*, 882 F.Supp. 911, 912-913 (D.S.D. 1995); *Donovan v. United States*, 807 F.Supp. 560, 564 (D.S.D. 1992). In this case, the unrebutted evidence establishes that Elmer and Jeanette Fink received documented loans which were delinquent and which were secured by a mortgage in favor of FSA on the property against which the FSA has sought foreclosure. Although the Defendants have presented objections to Plaintiff's Statement of Undisputed facts, the objections and arguments do not create a genuine issue of material fact or present a defense to the foreclosure action which is recognized under South Dakota statutory or case law.

Elmer and Jeanette Fink object, without a legal basis, to Plaintiff referring to itself as "Plaintiff" as opposed to "United States." These Defendants also object to Plaintiff providing the Court with copies, instead of originals, of the promissory notes in issue. FED. R. EVID. 1003 provides: "A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." In reviewing the file the Court concludes that there is no genuine question as to the authenticity of the original documents and that it is not unfair to consider the duplicates of the documents in issue.

Defendants challenge the sworn statement that the loans in issue are delinquent, not by providing evidence that loan payments were made as agreed, but by arguing that for each loan transaction an original Note was tendered to Plaintiff and the "Notes were received as a deposit in the credit money system." The Finks continue their argument as follows, "Finks now state the real value and purpose for tendering Notes and Mortgage Deeds is to place Certificates of Deposit with Plaintiff to participate in the credit money system, from which participation the Plaintiff has consistantly (sic) benefitted and has made earnings, which are now due and owing to Finks." Doc. 80. This argument is without any merit and does not create a genuine issue of material fact with regard to whether the loans were delinquent . The loans were and are delinquent.

The leases, bill of sale and grant deed which were filed by the Defendant with the Aurora County Register of Deeds contain confusing language. However, even if the Court construes these documents in the manner Defendants request, the Plaintiff still possesses a senior lien which has priority over any liens the Defendants attempted to place on the Aurora County land.

For all of the above reasons the Plaintiff's motion for summary judgment on its action for judgment against Elmer Fink, Jr., and decree of foreclosure will be granted. Plaintiff shall prepare and submit to the Court an appropriate decree and judgment and supporting materials calculating the amounts of principal and interest due and owing, together with costs and disbursements, as of the date of this Memorandum Opinion and Order.

## WHETHER ELMER FINK, JR., AND JEANETTE FINK ARE ENTITLED TO DEFAULT JUDGMENT AGAINST PLAINTIFF?

Elmer Fink, Jr, .and Jeanette Fink contend they are entitled to a default judgment against Plaintiff on the Finks' counterclaim. It is unclear why the Finks believe the Plaintiff is in default since Plaintiff filed an answer to the Counterclaim of Elmer Fink, Jr., and Jeannette Fink on October 6, 2005. Doc. 27. In addition, Federal Rule of Civil Procedure 55 (e) provides: "No judgment by default shall be entered against the United States or an officer or agency thereof unless the claimant establishes a claim or right to relief by evidence satisfactory to the court." For the reasons stated in the following section, the Finks in their counterclaim did not establish a right to relief by evidence satisfactory to this Court and the motion for default judgment is denied.

## WHETHER PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON DEFENDANTS' COUNTERCLAIMS?

Defendants Elmer Fink, Jr., and Jeanette Fink state in their counterclaim:

> The alleged claim stated in Complaint, regarding the referenced notes and mortgages, has been fully satisfied by the assignment of the settled and cured off-set obligation of Plaintiff owed to Elmer Fink, Jr. and Jeanette Fink done on February 12, 2000, using the national credit structure established by Plaintiff. This assignment of a portion of the proceeds from the duties and obligations, held in trust by United States of America, did effectively satisfy any obligation found under any valid notes and mortgages. USA had the obligation and duty to re-assign the real property.

The Finks in their counterclaim also allege the United States owes them over $950,238.29 in principle and interest and that the United States "had the duty and obligation to actually make some real money loan when first certain notes and mortgages were signed." Doc. 24.

Bristol Living Trust and Triple F Living Trust, in their counterclaims, contend that the Government committed fraud in contending that it had a superior lien and interest in the Aurora

County land . These counterclaims were signed by Elmer Fink, Jr. as a co-trustee of each trust. Doc. 25 and 26.

This Court denied an earlier motion for declaratory judgment submitted by the Finks in which the Finks contended they had a right to administratively establish, and that they had in fact so established, a parity claim against the Secretary of Agriculture. Doc. 55. In denying the motion, this Court held that the United States as a sovereign could not be sued without its consent as evidenced by a Congressional waiver of immunity. *See United States v. Mitchell*, 463 U.S. 206 (1983); *United States v. Kubrick*, 444 U.S. 111 (1979). This Court concluded that since the Finks did not disclose a Congressional waiver that would allow them to bring a declaratory judgment on the parity claim, this Court did not have subject matter jurisdiction to proceed with the motion for declaratory judgment. Doc. 55.

A counterclaim, however, may present a different situation with regard to the Government's immunity. "[W]hen the [G]overnment itself seeks its rights at the hands of the court, equity requires that the rights of other parties interested in the subject-matter should be protected." *Carr v. United States*, 98 U.S. 433, 438 (1878). Accordingly, when the United States as a plaintiff brings an action in court, it

> waives immunity as to claims of the defendant which assert matters in recoupment-arising out of the same transaction or occurrence which is the subject matter of the [G]overment's suit and to the extent of defeating the government's claim but not to the extent of a judgment against the government which is affirmative in the sense of involving relief different in kind or nature to that sought by the government or in the sense of exceeding the amount of the government's claims.

*United States v. Johnson*, 853 F.2d 619, 621 (8th Cir.1988) (quoting *Frederick v. United States*, 386 F.2d 481, 488 (5th Cir.1967)). This waiver of immunity does not extend to claims beyond the property in controversy. *See Miller v. Tony and Susan Alamo Found.,* 134 F.3d 910, 916 (8th Cir. 1998).

The Finks' meritless and frivolous claim that the United States owes them over $950,238.29 in principle and interest extends beyond the property in issue in the United States' action. In addition, there is no factual or legal support for the Finks' claim that the notes and mortgages have been fully satisfied by an assignment of an off-set obligation. For these reasons, Plaintiff is entitled to summary

judgment against Defendants Elmer Fink, Jr., and Jeanette Fink on these Defendants' counterclaim, and Defendants Elmer Fink, Jr., and Jeanette Fink's Motion for Summary Judgment on their counterclaim is denied.

A trust cannot appear in federal court without legal representation. *See Knoefler v. United Bank*, 20 F.3d 347, 348 (8th Cir. 1994). Even if the Bristol Living Trust and Triple F Living Trust were represented by counsel, however, they could not prevail on their counterclaims. Since this Court has determined that the Plaintiff possesses a senior lien which has priority over any liens the Defendants attempted to place on the Aurora County land, the counterclaims alleging fraud based on the United States' representation that it had a senior lien cannot survive summary judgment. Plaintiff is entitled to summary judgment on the counterclaims of the Bristol Living Trust and Triple F Living Trust. Accordingly,

IT IS ORDERED:

1. That Plaintiff's Motion for Summary Judgment (Doc. 75) is granted with regard to its action for judgment against Elmer Fink, Jr., and decree of foreclosure, and Plaintiff shall prepare and submit to this Court an appropriate decree and judgment and supporting materials calculating the amounts of principal and interest due and owing, together with costs and disbursements, as of the date of this Memorandum Opinion and Order;
2. That Plaintiff's Motion for Summary Judgment (Doc. 75) is granted against Elmer Fink, Jr., Jeanette Fink, Bristol Living Trust and Triple F Living Trust with regard to these Defendants' counterclaims;
3. That Defendants Elmer Fink, Jr., and Jeanette Fink's Motion for Summary Judgment (Doc. 80) is denied; and
4. That Defendants Elmer Fink, Jr., and Jeanette Fink's Motion for Default Judgment (Doc. 80) is denied.

Dated this 30th day of November, 2007.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: _____
(SEAL)   DEPUTY